**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF IOWA**



HENRY HERRERA,

     Plaintiff,

v.

    Case No.: 3:25-cv-50

WOODRUFF CONSTRUCTION, LLC;

KEVIN C. RIGDON, ESQ.;

ERIC MONAHAN;

JASON RECHKEMMER;

PAUL D. BURNS, ESQ.;

TONY HERRING;

BRADLEY & RILEY PC;

JOHN DOE ENTITIES 1-5,

     Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

    Plaintiff Henry Herrera ("Plaintiff" or "Herrera"), pro se, hereby files this Complaint against Defendants Woodruff Construction, LLC ("Woodruff"); Kevin C. Rigdon, Esq.; Paul D. Burns, Esq.; Bradley & Riley PC; Eric Monahan; Jason Rechkemmer; Tony Herring; and John Does 1-5 (collectively, "Defendants"), and alleges as follows:

### I.    INTRODUCTION

1. This civil action arises from Defendants' coordinated scheme to weaponize judicial and arbitration processes to obtain and enforce a void judgment against a dissolved entity (Henry's Painting, LLC or "HP"), and subsequently to improperly extend liability to Plaintiff Henry Herrera individually and his separate company, Henry's Painting & Contracting, LLC ("HPC"), neither of which were parties to the underlying proceedings.

2. What began as a routine subcontractor dispute concerning a painting contract for the Louden Housing Project transformed into a systematic campaign of fraud, procedural abuse, and due

process violations spanning more than four years. At the center of this scheme was Defendants' calculated decision to initiate arbitration against HP after receiving documented notice of its administrative dissolution, deliberately submitting a materially altered version of the subcontract during those proceedings, securing a default arbitration award based on defective service, and then unlawfully pursuing enforcement against non-parties.

3.    Defendants' conduct directly contravened Iowa Code § 489.705 (restricting litigation against dissolved LLCs), violated the written modification requirement of Iowa Code § 554.2201(1), and transgressed fundamental due process protections guaranteed by the Fourteenth Amendment, rendering the judgment void under Federal Rule of Civil Procedure 60(b)(4) and subject to vacatur for fraud on the court under Rule 60(d)(3).

4.    Defendants have employed contradictory positions throughout the litigation—first certifying in sworn affidavits that HP was a validly operating entity properly served with process, then later admitting in subsequent filings that HP had "discontinued business" before arbitration ever commenced. These irreconcilable representations trigger judicial estoppel and the doctrine of unclean hands.

5.    The judgment Defendants obtained through these unlawful tactics resulted in a $335,468.23 award—approximately 260% of the original $121,238.00 subcontract value—against a defunct entity that had properly notified all parties of its dissolution and withdrawal from proceedings. Defendants' subsequent enforcement actions against Plaintiff personally and against HPC constitute a calculated attempt to pierce the corporate veil without legal or factual basis.

6.    This is not a routine contract enforcement dispute. Rather, it involves a systematic pattern of litigation misconduct expressly designed to convert an uncontested arbitration against a dissolved entity into a mechanism for imposing liability on non-parties. Defendants' pattern of false sworn statements, material misrepresentations, and procedural abuse constitutes fraud on the court warranting not only vacatur under Rule 60(b)(4) and Rule 60(d)(3), but also injunctive relief and damages for violations of both federal and state law.

## II.    JURISDICTION AND VENUE

7.    This action arises under the Constitution and laws of the United States, including but not limited to: (a) the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.; (b) the Civil Rights Act of 1871, 42 U.S.C. § 1983; and (c) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise directly under federal law.

8. This Court has authority under the FAA to vacate the underlying arbitration award pursuant to 9 U.S.C. § 10(a)(1) and § 10(a)(4), where, as alleged herein, the award was procured by fraud and the arbitrator exceeded his powers by relying on an altered, unsigned contract and by rendering judgment against a dissolved entity not properly before the tribunal.

9. Additionally, this Court has jurisdiction to set aside the related state court judgment under Federal Rule of Civil Procedure 60(b)(4), as the judgment is void for lack of personal jurisdiction due to defective service on a dissolved entity lacking legal capacity, and under Rule 60(d)(3), as the judgment was procured through fraud on the court, including deliberate concealment of HP's dissolution status and formal withdrawal from arbitration.

10. The Court has supplemental jurisdiction over Plaintiff's state law claims—including fraudulent misrepresentation, abuse of process, tortious interference with business relationships, malicious prosecution, breach of contract, and unjust enrichment—pursuant to 28 U.S.C. § 1367(a), as these claims arise from the same nucleus of operative fact and form part of the same case or controversy as the federal claims under Article III of the United States Constitution.

11. Plaintiff does not assert diversity jurisdiction under 28 U.S.C. § 1332, as Plaintiff Henry Herrera, HPC, and Defendant Woodruff Construction, LLC are all citizens of the State of Iowa. Plaintiff expressly reserves the right to contest any inconsistent jurisdictional representations previously made by Defendants in related proceedings.

12. This Court has personal jurisdiction over all named Defendants. Defendant Woodruff Construction, LLC maintains its principal place of business in Fort Dodge, Iowa, and conducts substantial business operations within this District. Defendants Rigdon, Burns, Bradley & Riley PC, Monahan, Rechkemmer, and Herring are all residents of Iowa and/or conduct business within this jurisdiction. All relevant acts and omissions giving rise to the claims occurred in Iowa and affected Iowa-based individuals and entities.

13. Venue is proper in the United States District Court for the Southern District of Iowa, Central Division, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to these claims—including the confirmation of the arbitration award, the filing of the Petition in Equity, and all post-judgment enforcement actions—occurred in Johnson County, Iowa, which lies within this Division.

14. Importantly, this action is an original federal civil action under 28 U.S.C. § 1331, distinct from prior removal proceedings in Case No. 3:25-cv-00021-SHL-HCA. The claims herein arise under federal law and seek independent relief based on substantive federal causes of

action, not as a removed matter. Prior remand and fee orders entered on May 1, 2025, remain separate and unaffected by this filing.

### III. PARTIES

15. Plaintiff Henry Herrera is a natural person and resident of Johnson County, Iowa, and is the sole member of Henry's Painting, LLC ("HP"), an Iowa limited liability company formed on or about January 21, 2015, and administratively dissolved on September 7, 2021. He is also the sole member of Henry's Painting & Contracting, LLC ("HPC"), a separate Iowa limited liability company formed on March 6, 2020, which maintains distinct corporate formalities, separate financials, bank accounts, and business operations from HP. Mr. Herrera brings this action in his individual capacity, alleging that Defendants fraudulently obtained and unlawfully enforced a judgment against HP, and improperly extended post-judgment enforcement to him personally and to HPC—neither of which were parties to the arbitration or judgment confirmation proceedings.

16. Defendant Woodruff Construction, LLC is an Iowa limited liability company with its principal place of business in Fort Dodge, Iowa, and additional operations in Johnson County, Iowa. Woodruff operates as a general contractor for residential and commercial construction projects throughout Iowa. On or about April 25, 2019, Woodruff entered into a subcontract with HP for painting services on the Louden Housing Project in Fairfield, Iowa. Woodruff initiated and pursued arbitration against HP despite having received formal written notice on May 27, 2022, of HP's administrative dissolution and its withdrawal from arbitration. Woodruff knowingly submitted a materially altered subcontract (Version 1.21) during those proceedings and secured a default arbitration award in the amount of $335,468.23. Woodruff then obtained confirmation of this award in Johnson County District Court on December 16, 2022, and subsequently filed a Petition in Equity seeking to extend liability to Herrera and HPC based on meritless theories of successor liability and veil piercing, despite having full knowledge that neither were parties to the arbitration or judgment.

17. Defendant Kevin C. Rigdon, Esq. is an attorney licensed in Iowa who served as counsel of record for Woodruff in both the arbitration confirmation proceedings and the post-judgment equity action. Rigdon directed and participated in procedural misconduct, including knowingly violating court orders, misrepresenting service, submitting altered documents, and improperly pursuing enforcement against non-debtors. He is named as a defendant

based on his individual conduct and is sued both in his individual capacity and as a member of the alleged RICO enterprise.

18. Defendant Paul D. Burns, Esq. is an attorney licensed in Iowa who represented Woodruff in the arbitration and related state proceedings. Burns pursued arbitration against HP after receiving formal notice of its dissolution, relied on altered contractual documents, and made material misrepresentations in pleadings and court filings. His conduct directly supports Plaintiff's claims for fraud on the court, abuse of process, and RICO violations.

19. Defendant Bradley & Riley PC is an Iowa professional corporation and law firm that employed or supervised Defendants Rigdon and Burns during the relevant time period. The firm facilitated and ratified the misconduct described herein and is sued both vicariously for its attorneys' actions and directly as a participant in the alleged RICO enterprise.

20. Defendant Eric Monahan is the Controller of Woodruff Construction, LLC and submitted a sworn affidavit under penalty of perjury in support of Woodruff's Motion to Confirm Arbitration Award. Monahan knowingly misrepresented the legal status and service of HP and falsely attested to the authenticity of subcontract Version 1.21, which was never executed by HP. Version 1.21 introduced numerous unauthorized material changes including a "pay-when-paid" clause, new indemnity and liability terms, OSHA provisions, expanded scope descriptions, and removal of Exhibit C (payment schedule). Monahan's conduct constitutes perjury under Iowa Code § 720.2, fraud on the court under Rule 60(d)(3), and supports additional claims under 42 U.S.C. § 1983 and the civil RICO statute, 18 U.S.C. § 1962(c).

21. Defendant Jason Rechkemmer is the Chief Operating Officer of Woodruff and knowingly directed the unlawful enforcement strategy against Plaintiff and HPC. Rechkemmer admitted in debtor examination proceedings that there was no legitimate legal basis for the successor liability or veil-piercing theories asserted against Plaintiff and HPC, yet nevertheless directed and ratified the use of the judgment as a coercive tool to extract payment from non-parties.

22. Defendant Tony Herring is an employee or agent of Woodruff who participated in post-judgment enforcement efforts aimed at imposing liability beyond the scope of the judgment debtor. His participation is evidenced through emails and correspondence during the dispute escalation process, particularly communications dated January 24, 2022.

23. Defendants John Doe 1-5 are unidentified individuals or entities who participated in or facilitated the scheme described herein, including improper post-judgment enforcement

based on void judgments, issuance of improper subpoenas, and use of altered or falsified documents. Their identities will be confirmed through discovery.

## IV.    FACTUAL ALLEGATIONS

**A.    Contract Formation and Original Agreement (Version 1.2)**

24.    On or about April 25, 2019, Henry's Painting, LLC ("HP") and Woodruff Construction, LLC ("Woodruff") entered into a written Subcontract Agreement (Version 1.2) for the Louden Housing Project in Fairfield, Iowa.

25.    The Subcontract Agreement Version 1.2 was the sole and exclusive agreement between the parties and reflected a fixed-price contract valued at $121,238.00 for interior painting services.

26.    Notably, Version 1.2 contained no binding arbitration clause and no provisions allowing for unilateral modification of terms. Exhibit C  of this agreement set forth detailed payment terms and change order procedures that would govern the project.

27.    Under Iowa Code § 554.2201(1) and Restatement (Second) of Contracts §§ 213 and 216, any modification to this agreement—including changes to scope, payment procedures, or dispute resolution mechanisms—required mutual written consent from both parties. No such modification was ever executed between HP and Woodruff.

28.    The scope of work under Version 1.2 was explicitly limited to interior painting and incorporated Architect's Supplemental Instruction #16 ("ASI-16") dated January 22, 2020, which specified required paint types, colors, and accent wall locations.

29.    Project Meeting Minutes #19, dated February 26, 2020, confirmed that HP had completed all painting work on the third and second floors and had substantially completed the first floor with no documented deficiencies, defaults, or disputes. These minutes are business records admissible under Federal Rule of Evidence 803(6) and constitute definitive evidence of HP's contractual performance.

30.    Contrary to claims later made by Woodruff in its June 2020 termination notice and arbitration pleadings, internal project communications conclusively establish that East Wing painting work was expressly outside the scope of HP's original contractual obligations.

31.    On February 14, 2020, Woodruff's Project Manager Blake Pratt emailed Herrera requesting a separate bid for East Wing lead encapsulation, explicitly stating: "We are working to find a solution to the east wing exterior walls." This was not a request for clarification of existing scope but an unambiguous admission that this work fell outside the original contract.

32. This understanding was further reinforced on June 2, 2020, when Pratt again confirmed via email: "I agree 100% on the east wing painting." Superintendent Stephen Freese similarly acknowledged on June 5, 2020: "The Owner's Painter is supposed to paint the east wing."

33. These statements constitute admissions by a party-opponent under Federal Rule of Evidence 801(d)(2) and conclusively establish that East Wing work was never part of HP's contractual duties.

34. Contemporaneous project records further confirm Woodruff's understanding that a formal change order would be required for any additional painting work. Meeting Minutes #14 (December 11, 2019) noted that a new Change Order Request (COR) would be needed for additional walls, doors, and painting, while Meeting Minutes #24 (May 13, 2020) documented that no painting would occur in the East Wing due to site unavailability.

35. COR #48—identified in multiple project records as pending—was specifically tied to East Wing painting and remained unexecuted, further demonstrating this work was outside HP's base contract scope.

## B.    HP's Performance and Woodruff's Payment Manipulation

36. HP fully and timely performed all its contractual obligations under Subcontract Agreement Version 1.2. Project records consistently reflect that HP's work met or exceeded all contractual expectations and industry standards, as repeatedly acknowledged by Woodruff in contemporaneous meeting minutes and internal communications.

37. As detailed in Project Meeting Minutes #19 (February 26, 2020), HP had successfully completed all originally contracted painting work on the third and second floors, and substantial portions of the first floor, with no recorded deficiencies or disputes.

38. HP's work was executed in accordance with the Painting Contractors Association (PCA) P1 Standard, a nationally recognized benchmark for acceptable surface characteristics in painted finishes. Under PCA P1 Section 2.4, contractors are explicitly excluded from responsibility for damage caused by other trades.

39. Despite this industry standard limitation, HP frequently performed remedial work to repair surfaces damaged by other contractors and to correct substandard surface preparation—work that extended beyond its original contractual obligations.

40. On May 4, 2020, HP raised legitimate concerns about drywall defects, which Woodruff's Superintendent Stephen Freese acknowledged, confirming that the drywall contractor would be responsible for repairs before HP could reasonably be expected to resume painting.

Woodruff's own photographic documentation, including images dated June 22, 2020, corroborates these surface preparation issues.

41. In addition to its base contractual obligations, HP also performed significant extra-contractual work—including surface remediation, re-preparation, and repainting—without compensation. These efforts were documented and expressly acknowledged by Woodruff. After receiving photographic evidence of these additional services from HP, Project Manager Blake Pratt replied: "Thank you for the pictures—this is exactly what we need," confirming Woodruff's approval and acceptance of the remedial work.

42. Despite HP's well-documented performance, Woodruff engaged in a systematic pattern of payment withholding and financial manipulation. Following HP's completion of its base scope work (confirmed in Meeting #19), Woodruff failed to process or remit payment for any invoices submitted after April 15, 2020.

43. Michelle Anderson, Woodruff's Accounts Payable representative, acknowledged receipt of these legitimate invoices on June 18, 2020, yet no payments were ever issued.

44. On June 2, 2020, Project Manager Blake Pratt explicitly admitted in writing: "We have to talk them into it each month," referring to internal resistance from Woodruff's finance team —a clear acknowledgment of deliberate payment delays and bad faith.

45. This statement constitutes an admission by a party-opponent under Federal Rule of Evidence 801(d)(2) and confirms Woodruff's intentional pattern of payment obstruction.

46. Woodruff's bad faith extended to the retroactive imposition of new documentation requirements that were never part of the original contract. On June 3, 2020, HP objected in writing to Woodruff's sudden demand for AIA payment forms, stating: "AIA payments? I was never told from the beginning that's what you would like me to use."

47. The Subcontract Agreement Version 1.2 contained no AIA documentation requirement, and no such term was ever mutually agreed to in writing. Woodruff's unilateral attempt to impose these additional administrative barriers violated Iowa Code § 554.2201(1) and established contract law principles under Restatement (Second) of Contracts §§ 213 and 216.

48. Woodruff's obstructive payment tactics directly harmed HP and Plaintiff personally. To sustain project operations amid Woodruff's payment delays, HP was forced to secure a $36,973.28 promissory note with Sherwin-Williams on February 12, 2020. Henry Herrera personally guaranteed this note, and the payment obligations extended well beyond the project's completion.

49. Remarkably, Woodruff later cited this very promissory note in post-judgment proceedings as purported evidence of financial mismanagement, using it to support meritless veil-piercing and successor liability claims. This represents a textbook contradiction: Woodruff itself created the financial hardship it then exploited for tactical advantage. Veil-piercing is not available where the financial distress is manufactured by the party seeking equitable relief.

50. On June 26, 2020, despite clear documentary evidence of HP's performance, Woodruff issued a 48-hour termination notice falsely alleging that HP had failed to complete required work and was "currently overbilled." This baseless claim directly contradicted Woodruff's own contemporaneous project records, including Meeting Minutes #19, and internal communications acknowledging work completion.

51. The termination notice deliberately ignored HP's June 19, 2020 request for a formal walkthrough to confirm completion of the third floor, further demonstrating Woodruff's bad faith.

52. Woodruff's false assertions and bad faith conduct constituted a material breach of contract (for failure to pay and wrongful termination) and demonstrated a deliberate pattern of misconduct designed to evade payment obligations while manufacturing grounds for litigation.

## C.    The Altered Contract and Arbitration Fraud

53. Following HP's administrative dissolution by the Iowa Secretary of State on September 7, 2021, Woodruff initiated arbitration proceedings against HP in May 2022.

54. On May 27, 2022, HP formally notified both Woodruff and the arbitrator in writing of its administrative dissolution, defunct status, lack of assets, and legal incapacity to participate in arbitration.

55. Despite receiving this clear notice of HP's dissolution and withdrawal, Woodruff proceeded unilaterally with arbitration.

56. In these arbitration proceedings, Woodruff deliberately submitted a materially altered version of the subcontract—designated as Version 1.21—with the intent to mislead the arbitrator and fabricate a broader scope of liability and contractual obligations.

57. Version 1.21 was never executed by HP and contained significant unauthorized changes that were never reviewed or signed by HP, including: a. New OSHA compliance requirements; b. Financial control clauses allowing Woodruff to communicate directly with HP's subcontractors and redirect payments; c. A "pay-when-paid" clause not present in the original agreement; d. Expanded work obligations contradicted by contemporaneous

documentation; e. The removal of Exhibit C which contained essential payment terms; and f. Modified indemnity and liability provisions.

58.  Under Iowa Code § 554.2201(1) and Restatement (Second) of Contracts §§ 15, 213, and 216, such material contractual changes require mutual written agreement. No such agreement or signed copy of Version 1.21 exists; the only executed agreement was Version 1.2.

59.  Woodruff's assertion that Version 1.21 represented the operative agreement is directly contradicted by its own internal records and contemporaneous communications, including: a. The February 14, 2020 email in which Project Manager Blake Pratt requested a separate bid for East Wing painting, affirming it was outside HP's base contract; b. The June 2, 2020 email in which Pratt stated: "I agree 100% on the east wing painting;" and c. The June 5, 2020 statement by Superintendent Stephen Freese: "The Owner's Painter is supposed to paint the east wing."

60.  On August 16, 2022, the arbitrator issued a default award in favor of Woodruff in the amount of $314,915.23—more than 260% of the original $121,238.00 subcontract price. A supplemental award on September 7, 2022, added $20,553.00 in attorney's fees and costs, bringing the total to $335,468.23.

61.  On September 16, 2022, Woodruff filed a Motion to Confirm Arbitration Award in the Iowa District Court for Johnson County, certifying Version 1.21 as authentic through a sworn affidavit from its Controller, Eric Monahan, who attested under penalty of perjury to its authenticity.

62.  At the time of this certification, Woodruff had full access to the original Version 1.2 and knew that HP had never executed Version 1.21. This certification constitutes a material misrepresentation that satisfies the elements of perjury under Iowa Code § 720.2 and fraudulent misrepresentation under Iowa case law.

63.  The Motion to Confirm Arbitration Award falsely represented HP as an active, servable entity despite Woodruff's prior knowledge of HP's administrative dissolution and formal withdrawal from arbitration.

64.  On September 19, 2022, Woodruff purported to serve HP via its former registered agent— months after the statutory termination of agency authority under Iowa Code § 489.706— rendering service legally ineffective and constitutionally deficient.

65.  On December 16, 2022, the Iowa District Court entered default judgment against HP, relying on Woodruff's misrepresentations regarding HP's legal status and the validity of service.

**D.    Post-Judgment Enforcement Against Non-Parties**

66.  Following entry of the default judgment against HP, Woodruff launched an aggressive campaign to extend liability to non-judgment parties, specifically targeting Plaintiff Henry Herrera individually and his separate company, Henry's Painting & Contracting, LLC ("HPC").

67.  HPC was formed on March 6, 2020—over 18 months before HP's administrative dissolution on September 7, 2021—as an independent business entity with broader scope, including framing, siding, and roofing services beyond HP's painting focus.

68.  HPC maintained separate bank accounts, tax identification numbers, insurance policies, and corporate formalities distinct from HP. No agreement exists in which HPC assumed HP's liabilities, and there was no de facto merger or continuity of operations between the entities.

69.  On November 17, 2023, Woodruff conducted improper debtor examinations that blended personal and corporate inquiries, despite the court's prior orders requiring separation of examination topics by capacity (HP, HPC, and Henry Herrera personally).

70.  These examinations transgressed Iowa Code Chapter 630, which limits inquiries strictly to the judgment debtor's own property.

71.  The examination transcript reveals intrusive questioning into Herrera's personal finances, HPC's operations, assets, vehicles, and alleged transfers. At Debtor Exam Tr. 56:16-57:9, counsel improperly pressed Herrera for details regarding personal vehicles acquired via credit for HPC's benefit, despite the lack of any judgment against him personally.

72.  Woodruff also issued overbroad subpoenas to unrelated third parties, including ABC Disposal Systems, Otte's Accounting, and others, seeking excessive and irrelevant information in violation of Iowa Rules of Civil Procedure 1.1701(4)(a) and 1.1701(3)(c).

73.  On December 15, 2023, Woodruff filed a Petition in Equity (Case No. EQCV084907) asserting meritless theories of successor liability, veil piercing, and fraudulent transfer against Herrera and HPC.

74.  This petition relied on fundamentally contradictory positions. In its 2022 Motion to Confirm Arbitration Award, Woodruff had certified service on HP as though it were a valid operational entity. Yet in its Petition in Equity and 2025 Trial Brief, Woodruff acknowledged that HP had ceased operations in August 2020 and was dissolved in September 2021—months before arbitration.

75.  These contradictory assertions trigger the doctrine of judicial estoppel, which bars parties from asserting inconsistent legal positions in successive proceedings. Furthermore, the

doctrine of unclean hands bars equitable relief where a party has engaged in deceptive conduct.

76. As a direct result of Defendants' improper enforcement actions, Plaintiff has suffered significant harm, including damage to his business reputation, client relationships, banking relationships, and credit standing; substantial attorney's fees and litigation costs; emotional distress; and financial strain, including loss of contracts and business opportunities.

## V.    CAUSES OF ACTION
## COUNT I: VOID JUDGMENT
(Against All Defendants)

Federal Rule of Civil Procedure 60(b)(4)

77. Plaintiff realleges and incorporates by reference all preceding paragraphs.

78. This cause of action arises under Federal Rule of Civil Procedure 60(b)(4), which mandates that a judgment must be set aside if it is void due to the rendering court's lack of personal jurisdiction or a violation of due process. See *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80 (1988); Iowa Code § 489.705.

79. HP was administratively dissolved by the Iowa Secretary of State on September 7, 2021, and had ceased operations no later than August 20, 2020.

80. On May 27, 2022—prior to issuance of the arbitration award—HP formally notified Woodruff and the arbitrator of its dissolution and withdrawal from arbitration.

81. Under Iowa Code § 489.705, a dissolved limited liability company lacks the legal capacity to conduct business or to be sued, except as necessary for winding up.

82. HP had no legal counsel, assets, or participation in the arbitration after its withdrawal and dissolution and did not consent to arbitration or to being sued in state court.

83. Woodruff proceeded unilaterally with arbitration, obtained a default award, and filed a Motion to Confirm in state court in September 2022.

84. The Motion falsely certified that HP had been properly served and deliberately failed to disclose HP's legal dissolution, incapacity, and non-participation.

85. On September 19, 2022, Woodruff purported to serve HP via its former registered agent— months after the statutory termination of agency authority under Iowa Code § 489.706— rendering service legally ineffective and constitutionally deficient.

86. As held in *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. at 84-86, a judgment entered without constitutionally sufficient notice and an opportunity to be heard violates due process and cannot stand.

87. Woodruff's own admissions in its Petition in Equity (December 2023) and Trial Brief (February 2025) confirm that HP was dissolved and did not participate in arbitration, directly contradicting earlier representations to the state court.

88. These admissions demonstrate that the judgment was obtained through misrepresentation and without valid jurisdiction, rendering it void as a matter of law.

89. Plaintiff respectfully requests that this Court: (a) Declare the December 16, 2022 state court judgment confirming the arbitration award void ab initio under Federal Rule of Civil Procedure 60(b)(4); (b) Vacate the judgment in its entirety; (c) Enjoin any and all post-judgment enforcement efforts based on the void judgment; (d) Award Plaintiff reasonable attorneys' fees and costs; and (e) Grant such other and further relief as the Court deems just and appropriate.

## COUNT II: FRAUD ON THE COURT

### (Against All Defendants)

### Federal Rule of Civil Procedure 60(d)(3)

90. Plaintiff realleges and incorporates by reference all preceding paragraphs.

91. This cause of action arises under Federal Rule of Civil Procedure 60(d)(3), which preserves the Court's inherent power to set aside a judgment for fraud on the court.

92. Defendants perpetrated a deliberate scheme to defraud the arbitration tribunal and the Iowa District Court by: a. Concealing HP's administrative dissolution and formal withdrawal from arbitration; b. Submitting a materially altered subcontract (Version 1.21) that was never executed by HP and contained significant unauthorized changes; c. Falsely certifying the authenticity of Version 1.21 through sworn affidavits; d. Misrepresenting the validity of service on HP's former registered agent after dissolution; and e. Taking contradictory positions regarding HP's legal status throughout the proceedings.

93. Under the doctrine articulated in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245-46 (1944), such conduct constitutes fraud on the court where, as here, it involves a deliberately planned and carefully executed scheme" to defraud the court and improperly influence its decision.

94. Defendants' fraudulent conduct was directed at the judicial machinery itself, implicating officers of the court (Defendants Rigdon and Burns) in a scheme that prevented the adversary process from functioning in the customary manner.

95. These acts of fraud were specifically designed to subvert the integrity of the legal process and resulted in a judgment that would not have been rendered but for the fraudulent conduct.

96. The judgment obtained through this fraudulent scheme has been used as an instrument of further injustice, targeting non-parties (Plaintiff and HPC) who had no opportunity to defend in the original proceedings.

97. The nature and magnitude of Defendants' fraudulent misconduct warrant exercise of the Court's inherent power to vacate the judgment and provide complete relief to the injured party.

98. Plaintiff respectfully requests that this Court: (a) Declare that the December 16, 2022 judgment was obtained through fraud on the court; (b) Vacate the judgment pursuant to Federal Rule of Civil Procedure 60(d)(3); (c) Award sanctions against Defendants and their counsel for their fraudulent conduct; (d) Award Plaintiff his reasonable attorneys' fees and costs; and (e) Grant such other and further relief as the Court deems just and proper.

### COUNT III: VIOLATIONS OF THE FEDERAL ARBITRATION ACT

(Against Defendants Woodruff, Rigdon, Burns, and Bradley & Riley PC)

9 U.S.C. § 10(a)(1) and § 10(a)(4)

99. Plaintiff realleges and incorporates by reference all preceding paragraphs.

100. This cause of action arises under the Federal Arbitration Act ("FAA"), specifically 9 U.S.C. § 10(a)(1) and § 10(a)(4), which authorize a federal court to vacate an arbitration award where: (1) the award was procured by corruption, fraud, or undue means (§ 10(a)(1)); or (2) the arbitrator exceeded his powers or acted beyond the scope of the arbitration agreement (§ 10(a)(4)).

101. Defendants Woodruff, Rigdon, Burns, and Bradley & Riley PC procured the arbitration award through deliberate fraud and misrepresentation, including but not limited to:

a. Submitting an altered subcontract (Version 1.21) that was never signed by Plaintiff or HP and that introduced unauthorized substantive changes, including a "pay-when-paid" clause, modified indemnity and liability terms, removal of Exhibit C containing key financial provisions, and arbitration provisions absent from the executed agreement (Version 1.2);

b. Certifying the altered contract as authentic during arbitration and in the Motion to Confirm in state court, while concealing HP's administrative dissolution (effective September 7, 2021) and formal withdrawal from arbitration (communicated on May 27, 2022);

c. Submitting false sworn statements, including affidavits and declarations by Defendant Monahan attesting to the authenticity and enforceability of the altered subcontract; and

d. Deliberately mischaracterizing contractual obligations, scope of work, and alleged performance defaults to secure a default award without genuine adjudication of the merits.

102. These acts constitute fraud on the tribunal and undue means that suppressed a legitimate defense, rendering the award void under 9 U.S.C. § 10(a)(1).

103. Additionally, the arbitrator exceeded his lawful authority by:

a. Issuing an award against HP despite its administrative dissolution, lack of legal capacity, and formal withdrawal from arbitration—circumstances that deprived the arbitrator of jurisdiction;

b. Relying on a fabricated and unsigned agreement (Version 1.21) that was never executed by HP and did not reflect mutual assent, in direct violation of the FAA's requirement for valid arbitration agreements;

c. Proceeding without valid consent to arbitrate, a fundamental prerequisite to jurisdiction under the FAA, thereby exceeding the arbitrator's delegated authority;

d. Awarding damages exceeding 260% of the original contract value without evidentiary basis or notice to the dissolved party, far beyond the scope contemplated by the valid subcontract; and

e. Ignoring fundamental procedural due process by disregarding safeguards essential to the fairness and legitimacy of arbitration, including basic notice and an opportunity to be heard.

104. These actions reflect a clear excess of authority, rendering the award void under 9 U.S.C. § 10(a)(4).

105. The arbitration award of $314,915.23—later increased to $335,468.23 with supplemental fees—is void and unenforceable under the FAA.

106. Plaintiff respectfully requests that this Court: (a) Declare the arbitration award void ab initio under 9 U.S.C. § 10(a)(1) and § 10(a)(4); (b) Vacate the arbitration award in its entirety; (c) Vacate the state court judgment confirming the arbitration award; (d) Enter injunctive relief prohibiting any further enforcement based on the vacated award or judgment; (e) Award costs and attorneys' fees as appropriate; and (f) Grant such other and further relief as the Court deems just and equitable.

## COUNT IV: CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983

### (Against All Defendants)

107. Plaintiff realleges and incorporates by reference all preceding paragraphs.

108. This cause of action arises under the Civil Rights Act of 1871, 42 U.S.C. § 1983, which provides a remedy for the deprivation of constitutional rights under color of state law.

109. Defendants deprived Plaintiff of his constitutionally protected rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution by:

a. Procuring and enforcing a judgment against HP without proper service or jurisdiction, in violation of fundamental due process requirements established in *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80 (1988);

b. Utilizing state court processes, including confirmation proceedings, debtor examinations, and post-judgment enforcement mechanisms, to extend liability to non-judgment parties (Plaintiff and HPC) without affording them the opportunity to defend;

c. Knowingly submitting falsified and altered documents to state tribunals to obtain judicial enforcement; and

d. Using state court procedural mechanisms to pursue garnishment, asset seizure, and examination of non-debtors while concealing material facts regarding HP's dissolution and the altered contract from the court.

110. Defendants acted under color of state law by:

a. Invoking and misusing the judicial power of the State of Iowa to confirm the arbitration award and enforce the resulting judgment;

b. Utilizing state court processes, including subpoenas, debtor examinations, and garnishment mechanisms created by and enforced through state authority; and

c. Presenting themselves as legitimate users of state judicial power while knowing they had no valid basis for enforcement against Plaintiff or HPC.

111. Defendants' conduct constitutes a direct violation of clearly established constitutional rights of which reasonable persons would have known, including:

a. The right to procedural due process before deprivation of property interests;

b. The right to be free from enforcement of judgments against non-parties; and

c. The right to fair and honest proceedings free from fraudulent misrepresentations.

112. As a direct and proximate result of Defendants' violations, Plaintiff has suffered substantial damages, including actual financial losses, emotional distress, harm to reputation, and

ongoing business interference, entitling him to compensatory and punitive damages under 42 U.S.C. § 1983.

113. Plaintiff respectfully requests that this Court: (a) Enter judgment against all Defendants for violations of 42 U.S.C. § 1983; (b) Award compensatory damages in an amount to be determined at trial; (c) Award punitive damages against Defendants in an amount sufficient to deter similar misconduct; (d) Award Plaintiff his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and (e) Grant such other and further relief as the Court deems just and proper.

## COUNT V: CIVIL RACKETEERING (RICO)

### (Against All Defendants) 18 U.S.C. §§ 1962(c), 1964(c)

112. Plaintiff realleges and incorporates by reference all preceding paragraphs.

113. This cause of action arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), which prohibits any person employed by or associated with an enterprise engaged in interstate commerce from conducting or participating in the conduct of the enterprise's affairs through a pattern of racketeering activity.

114. Defendants formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4). This enterprise had a common and unlawful purpose: (1) to obtain and enforce a judgment against a defunct company, Henry's Painting, LLC ("HP"); (2) to falsely extend that judgment to Plaintiff Henry Herrera and his business, Henry's Painting & Contracting, LLC ("HPC"); and (3) to achieve these aims by abusing legal process, falsifying documents, and coercing payment from non-debtors.

115. The enterprise engaged in and affected interstate commerce through, among other activities, the construction business, banking transactions, communications across state lines, and use of interstate mail and wire facilities.

116. Defendants conducted and participated in the conduct of the enterprise's affairs through a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5), consisting of multiple, related acts of:

   a. Mail Fraud (18 U.S.C. § 1341): Defendants Woodruff, Rigdon, and Burns transmitted altered contracts—including the unauthenticated Version 1.21—and false affidavits through U.S. mail to arbitrators and courts;

   b. Wire Fraud (18 U.S.C. § 1343): Defendants filed materially false documents, including certifications of service and misrepresented contracts, via electronic court systems and interstate communications;

17

c. Perjury (18 U.S.C. § 1621): Defendant Monahan submitted knowingly false sworn statements, including affidavits falsely attesting to the authenticity of Version 1.21;

d. Obstruction of Justice (18 U.S.C. § 1503): Defendants collectively violated judicial orders, including the November 17, 2023 debtor examination order, and misrepresented material facts to manipulate legal proceedings and suppress opposition; and

e. Extortion (18 U.S.C. § 1951): Defendants used the threat of judicial enforcement of a void judgment to extract money and concessions from non-parties to the original proceedings.

117. These predicate acts occurred over a period exceeding four years (2020-2025), involved the same parties, methods, and victims, and pursued a common goal of obtaining and enforcing a fraudulent judgment. They satisfy both the "relatedness" and "continuity" prongs required to establish a pattern of racketeering activity under H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989).

118. The enterprise leveraged legal processes to create a false appearance of legitimacy while engaging in conduct designed to defraud, coerce, and harm Plaintiff.

119. As a direct and proximate result of Defendants' racketeering activities, Plaintiff has suffered injury to his business and property, including:

a. Loss of contracts, clients, and revenue exceeding $19,977,206;

b. Harm to business reputation and operations;

c. Litigation and defense costs responding to unlawful enforcement; and

d. Economic loss and reputational injury.

120. Plaintiff is entitled to all remedies available under 18 U.S.C. § 1964(c), including treble damages, injunctive relief, and attorneys' fees.

121. Plaintiff respectfully requests that this Court: (a) Enter judgment in favor of Plaintiff and against all Defendants under this Count; (b) Award treble damages pursuant to 18 U.S.C. § 1964(c); (c) Award Plaintiff his reasonable attorneys' fees and costs of suit; (d) Vacate the judgment obtained through racketeering conduct; (e) Grant injunctive relief prohibiting further enforcement of the void judgment; (f) Impose sanctions as warranted by the misconduct alleged; and (g) Grant such other and further relief as this Court deems just and proper.

## COUNT VI: FRAUDULENT MISREPRESENTATION

### (Against All Defendants)

Iowa Common Law

121. Plaintiff realleges and incorporates by reference all preceding paragraphs.

122. This cause of action arises under Iowa common law for fraudulent misrepresentation. A party is liable for fraudulent misrepresentation where it: (1) makes a representation; (2) knowing it is false; (3) with intent to deceive; (4) upon which another justifiably relies; and (5) to their detriment.

123. Defendants made the following specific material misrepresentations:

a. Contractual Misrepresentation: Defendants Woodruff, Rigdon, Burns, and Bradley & Riley PC submitted a materially altered subcontract (Version 1.21), falsely presenting it as the governing agreement between HP and Woodruff. This version introduced substantive differences from the executed agreement (Version 1.2), including expanded scope, indemnity provisions, removal of financial exhibits, and modified arbitration and payment terms. Defendant Monahan, under penalty of perjury, attested to the authenticity of Version 1.21 despite knowing it was never executed by HP.

b. Misrepresentation of Legal Entity Status: Defendants Woodruff, Burns, and Rigdon certified to the arbitrator and the Iowa District Court that HP was an active and suable entity, despite knowing it had been administratively dissolved on September 7, 2021, and had formally withdrawn from arbitration on May 27, 2022. These facts were deliberately concealed to secure a default judgment.

c. Fabricated Successor Liability Claims: Defendants Woodruff, Rechkemmer, and Burns falsely alleged that HPC was a mere continuation or alter ego of HP, despite lacking evidence of asset transfer, commingling, or disregard of corporate formalities. These misrepresentations were used to support veil-piercing theories and improperly target Plaintiff individually.

d. Termination and Scope Misrepresentations: Defendants Woodruff and Rechkemmer falsely claimed HP defaulted on contractual obligations, failed to complete required work, and overbilled. Project records and internal communications confirm that HP had completed its scope of work and that alleged deficiencies (e.g., East Wing painting) were outside the contract's scope.

e. False Service of Process Certifications: Defendants Woodruff and Burns certified that HP had been properly served via its former registered agent on September 19,

2022, despite knowing that dissolution had terminated that agent's authority. This certification was material to securing default confirmation of the arbitration award.

124. Defendants knew these representations were false when made and acted with scienter, as evidenced by:

   a. Their possession of the original executed contract (Version 1.2);

   b. Their receipt of formal notice of HP's dissolution on May 27, 2022;

   c. Their internal communications acknowledging work completion and scope limitations; and

   d. Their shifting positions regarding HP's legal status throughout the proceedings.

125. Defendants made these false representations with the intent to deceive the arbitrator, state court, and Plaintiff, for the purpose of securing an uncontested award and judgment that could then be leveraged against Plaintiff and HPC.

126. The arbitrator and Iowa District Court justifiably relied upon these misrepresentations in rendering the default arbitration award and entering the state court judgment. Plaintiff was compelled to defend against enforcement efforts premised on these falsehoods.

127. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff has suffered:

   a. Business losses and loss of contracts;

   b. Reputational harm within the construction industry;

   c. Legal fees incurred to defend against void proceedings;

   d. Emotional distress and financial hardship; and

   e. Exposure to improper garnishment, enforcement, and veil-piercing.

128. Defendants' conduct was willful, malicious, and undertaken in reckless disregard of Plaintiff's rights, warranting punitive damages.

129. Plaintiff respectfully requests that this Court: (a) Enter judgment in favor of Plaintiff and against all Defendants under this Count; (b) Award compensatory damages in an amount to be determined at trial; (c) Award punitive damages in an amount sufficient to punish Defendants and deter similar conduct; (d) Award Plaintiff the costs of suit and reasonable attorneys' fees; and (e) Grant such other and further relief as the Court deems just and appropriate.

**COUNT VII: ABUSE OF PROCESS**

(Against All Defendants)

Iowa Common Law

129. Plaintiff realleges and incorporates by reference all preceding paragraphs.

130. This cause of action arises under Iowa common law for abuse of process, which occurs when legal process is used for an improper purpose, outside the scope of its intended function—typically to coerce, harass, or gain an unfair advantage unrelated to resolving the underlying dispute.

131. Defendants engaged in a systematic and willful misuse of arbitration, state court litigation, and post-judgment enforcement proceedings to harass Plaintiff, extract payments from non-debtors, and impose liability where none lawfully existed. Their conduct included:

a. Proceeding Against a Dissolved Entity: Initiating and continuing arbitration against Henry's Painting, LLC (HP) despite its administrative dissolution on September 7, 2021, and formal withdrawal from arbitration on May 27, 2022—in violation of Iowa Code §§ 489.304 and 489.705.

b. Improper Confirmation: Seeking confirmation of the arbitration award by serving HP's former registered agent post-dissolution, despite Iowa Code § 489.706 rendering that agent's authority void. This also violated constitutional due process as established in *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80 (1988).

c. Targeting Non-Parties: Pursuing enforcement against Henry Herrera individually and his business, Henry's Painting & Contracting, LLC (HPC), despite neither being parties to the arbitration or judgment.

d. Violating Court Orders: Defying the court's November 17, 2023 order requiring separate debtor examinations by conducting joint questioning, and explicitly stating, "I'm going to do it how I would like to do it," in direct defiance of judicial authority.

e. Improper Debtor Examinations: Misusing the examination process to ask irrelevant and invasive personal questions (e.g., marital status, gambling) in violation of Iowa Code § 630.1.

f. Harassment of Third Parties: Issuing burdensome subpoenas to entities such as ABC Disposal Systems, Auto Toyz Inc., Locals Love Us, Otte's Accounting and Tax P.C., and Aero Rental, in violation of Iowa R. Civ. P. 1.503-1.504 and 1.431(3), to disrupt Plaintiff's business relationships and cause reputational harm.

g. Improper Garnishments: Attempting to garnish accounts belonging to HPC—a non-debtor—in violation of Iowa Code § 626.26.

h. Fabricating Evidence: Relying on a materially altered and unauthenticated subcontract (Version 1.21) to support improper enforcement actions and post-judgment claims.

i. Shifting Legal Theories: Alternating litigation positions—at times claiming HP was legally active, and at other times asserting it was defunct—to pursue alter ego theories, demonstrating bad-faith manipulation of legal process.

132. Defendants acted with actual malice and in reckless disregard of Plaintiff's rights. Rather than pursuing legitimate judicial remedies, Defendants weaponized the legal process to intimidate, coerce payments, and inflict reputational and financial harm.

133. As a direct and proximate result of Defendants' abuse of process, Plaintiff has sustained: a. Significant legal expenses defending against improper and malicious proceedings; b. Business losses and operational disruption; c. Reputational harm within the Iowa construction and vendor community; d. Interference with banking and vendor relationships due to overbroad discovery and garnishments; e. Emotional distress and financial instability from prolonged litigation harassment; and f. Coerced financial obligations, including a $36,973.28 personal guarantee to Sherwin-Williams necessitated by disrupted operations.

134. Defendants' actions justify an award of punitive damages to deter similar misconduct in the future.

135. Plaintiff respectfully requests that this Court: (a) Enter judgment in Plaintiff's favor and against all Defendants under this Count; (b) Declare that Defendants' conduct constitutes abuse of process under Iowa law; (c) Award compensatory damages in an amount to be determined at trial; (d) Award punitive damages in an amount sufficient to punish Defendants and deter similar conduct; (e) Award costs of suit and reasonable attorneys' fees; (f) Enjoin Defendants from further enforcement efforts based on the void judgment; (g) Refer attorneys Kevin C. Rigdon and Paul D. Burns to the Iowa Supreme Court Attorney Disciplinary Board for willful violation of court orders and professional misconduct; (h) Sanction Defendants and their counsel for procedural abuse and bad faith litigation; (i) Exclude all evidence obtained through improper discovery; and (j) Grant such other and further relief as the Court deems just and appropriate.

## COUNT VIII: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

(Against All Defendants)

Iowa Common Law

135. Plaintiff realleges and incorporates by reference all preceding paragraphs.

136. This cause of action arises under Iowa common law for tortious interference with existing and prospective business relationships. Under Iowa law, tortious interference occurs when a defendant: (1) intentionally and improperly interferes with another's contractual or business relations; (2) by acting without justification or privilege; (3) with actual malice or reckless disregard for the rights of another; and (4) causes resulting damage to the plaintiff.

137. Defendants engaged in a prolonged and deliberate campaign of legal harassment and reputational harm, intentionally interfering with Plaintiff's business relationships with vendors, lenders, and clients through:

a. Enforcing a Void Judgment: Defendants relied on a judgment obtained through fraud and without jurisdiction to initiate aggressive post-judgment enforcement actions against Plaintiff individually and HPC. These actions were based on a void arbitration award entered against HP and included improper veil-piercing efforts.

b. Improper Garnishment Attempts: Defendants pursued garnishments against HPC's bank accounts—despite HPC being a non-judgment debtor—in violation of Iowa Code § 626.26. These garnishment attempts interfered with Plaintiff's financial stability and credit access.

c. Issuing Harassing Subpoenas: Defendants issued subpoenas to third parties with known ties to Plaintiff, including ABC Disposal Systems, Auto Toyz Inc., Locals Love Us, Otte's Accounting and Tax P.C., and Aero Rental and Party Shoppe. These subpoenas sought irrelevant or overly broad information, aiming to cast suspicion on Plaintiff's business practices and undermine essential business relationships.

d. False and Malicious Public Statements: Defendants disseminated false assertions about Plaintiff's alleged default, fraud, and successor liability in public filings and correspondence, thereby damaging Plaintiff's reputation within the construction industry.

e. Creation of a Litigation Cloud: Defendants fabricated liability by submitting altered contracts and manufactured claims, creating a litigation cloud that discouraged prospective business partners, interfered with existing contracts, and forced Plaintiff into a personal guarantee on a $36,973.28 Sherwin-Williams note to maintain operations.

138. Defendants' conduct was neither privileged nor incidental to a bona fide legal dispute. Instead, it was carried out with actual malice, in bad faith, and with the ulterior purpose of

coercing payment and damaging Plaintiff's commercial standing. This harassment far exceeded the bounds of lawful enforcement activity.

139. As a direct and proximate result of Defendants' tortious interference, Plaintiff has suffered: a. Termination or deterioration of vendor, client, and supplier relationships; b. Denial of credit and banking disruptions; c. Loss of current and future business opportunities; d. Increased operational costs and difficulties securing key materials and labor; e. Reputational injury across the Iowa construction market; f. Business instability and erosion of goodwill; g. Emotional distress and mental anguish; and h. Litigation expenses, interest, and related financial losses.

140. Because Defendants acted intentionally, willfully, and in reckless disregard of Plaintiff's rights and economic livelihood, that entitles Plaintiff Henry Herrera of punitive damages.

141. Plaintiff respectfully requests that this Court: (a) Enter judgment in favor of Plaintiff and against all Defendants under this Count; (b) Award compensatory damages in an amount to be determined at trial; (c) Award punitive damages in an amount sufficient to punish Defendants and deter similar conduct; (d) Award costs of suit and reasonable attorneys' fees; and (e) Grant such other and further relief as the Court deems just and appropriate.

## COUNT IX: BREACH OF CONTRACT

### (Against Defendant Woodruff Construction, LLC)

Iowa Common Law

141. Plaintiff realleges and incorporates by reference all preceding paragraphs.

142. This cause of action arises under Iowa law for breach of contract. The claim is based on a valid and enforceable subcontract agreement between Henry's Painting, LLC ("HP") and Woodruff Construction, LLC ("Woodruff"), executed on or about April 25, 2019 (referred to as Subcontract Version 1.2). The agreement governed the scope of painting services for the Louden Housing Project and established fixed-price payment and performance obligations.

143. Woodruff materially breached the subcontract by failing to remit payment for work HP completed in full compliance with contractual terms. Despite no evidence of material defects or nonperformance, Woodruff: a. Withheld payment on invoices submitted after April 15, 2020, totaling approximately $154,950.88; b. Imposed retroactive documentation requirements—such as AIA forms—not contemplated by the subcontract, first demanded after the work was performed; and c. Acknowledged internally that these delays were strategic, as reflected in a June 2, 2020 email stating they had to "talk them into it each month."

144. As a direct result, HP experienced significant cash flow issues, forcing Plaintiff to personally guarantee a $36,973.28 promissory note to Sherwin-Williams to maintain operations.

145. On June 26, 2020, Woodruff issued a 48-hour notice of default, alleging overbilling and incomplete work. This notice was fraudulent and pretextual, designed to avoid further payment obligations. Supporting evidence includes: a. Internal records and May 13, 2020 meeting minutes confirming HP was not contractually obligated to complete the East Wing painting; b. Documentation showing the cited deficiencies were outside the scope of Subcontract Version 1.2; and c. Project logs reflecting that HP's performance met or exceeded contractual standards.

146. Woodruff's wrongful termination directly precipitated HP's financial collapse, culminating in its administrative dissolution on September 7, 2021.

147. Woodruff further breached its contractual obligations by fraudulently submitting an altered, unsigned version of the subcontract (Version 1.21) in arbitration and court proceedings. This altered version introduced material changes, including: a. Insertion of "pay-when-paid" clauses; b. Expanded indemnity and OSHA compliance provisions; and c. Removal of Exhibit C which set out critical original payment terms.

148. HP never executed Version 1.21. Woodruff's submission and certification of its authenticity —under oath by Eric Monahan—violated: a. Iowa Code § 554.2201(1) (requiring signed writings for contract modifications); b. Restatement (Second) of Contracts §§ 213, 216 (integration and exclusion of inconsistent terms); and c. Iowa Code § 720.2 (prohibiting false certifications under oath).

149. This fraudulent submission served as the basis for the arbitration award and subsequent void state court judgment, compounding Woodruff's contractual breaches.

150. As a direct and proximate result of Woodruff's breaches, Plaintiff has suffered: a. Unpaid contract balances totaling approximately $154,950.88; b. Uncompensated labor and materials provided outside the original scope; c. Financial losses and payment delays; d. Personal liability for the $36,973.28 Sherwin-Williams promissory note; e. Lost profits and reputational harm following wrongful termination; and f. Consequential damages, including elevated operational costs, credit losses, and legal expenses.

151. Plaintiff respectfully requests that this Court: (a) Enter judgment in favor of Plaintiff and against Defendant Woodruff Construction, LLC on this Count; (b) Award compensatory and consequential damages in an amount to be proven at trial; (c) Award prejudgment and post-

judgment interest as permitted by law; (d) Award costs of suit and reasonable attorneys' fees; and (e) Grant such other and further relief as the Court deems just and appropriate.

## COUNT X: UNJUST ENRICHMENT

(Against Defendant Woodruff Construction, LLC)

Iowa Common Law

152. Plaintiff realleges and incorporates by reference all preceding paragraphs.

153. This cause of action arises under Iowa common law for unjust enrichment, which holds that a party who has been unjustly enriched at the expense of another is subject to restitution. Under Iowa law, unjust enrichment occurs when: (1) a party confers a benefit on another; (2) the recipient knowingly accepts and retains the benefit; and (3) retention of the benefit under the circumstances would be inequitable.

154. Defendant Woodruff was enriched through the receipt and retention of valuable services, labor, and materials provided by Henry's Painting, LLC ("HP"). These benefits include:

a. Completion of all contracted painting work under the executed subcontract (Version 1.2), including base coat and finish coat painting of interior common areas and individual units in the Louden Housing Project; caulking, surface preparation, and touch-ups for compliance with punch list requirements; and warranty-related rework between July 2019 and April 2020;

b. Additional labor, surface preparation, and lead encapsulation performed beyond the original contract scope, including repainting and remedial work in the East Wing and stairwells at Woodruff's request; last-minute scheduling and expedited turnaround during project delays in Q1 2020; and temporary protection and cleanup work not originally contracted; and

c. Use of Plaintiff's materials (paint, sealants, and coatings), tools, and skilled labor, documented in contemporaneous meeting records and substantiated by photographic evidence provided to Woodruff.

155. Woodruff knowingly accepted and benefited from these services and incorporated them into its own project deliverables, enabling its completion of the Louden Housing Project.

155. Despite receiving the full benefit of Plaintiff's performance, Woodruff failed and refused to pay for substantial portions of the work performed. Specifically, Woodruff:

a. Withheld payment for invoices submitted after April 15, 2020 (totaling approximately $154,950.88);

b. Failed to process or approve valid change orders, including COR #48 (related to East Wing repainting);

c. Imposed retroactive documentation requirements (e.g., AIA forms) not present in the original subcontract;

d. Terminated HP based on pretextual claims of nonperformance; and

e. Relied on an altered subcontract (Version 1.21) in arbitration to evade contractual obligations.

156. Woodruff's refusal to pay—while retaining the benefit of HP's work—was inequitable and executed in bad faith. Plaintiff alleges that Woodruff's enrichment was obtained through coercion and manipulation of legal process; supported by misrepresentations during arbitration and enforcement; and retained in violation of the original subcontract's payment terms and principles of fair dealing.

157. As a direct and proximate result of Woodruff's unjust enrichment, Plaintiff has sustained financial losses for:

a. The reasonable value of unpaid labor and materials;

b. Uncompensated change order work and additional services performed;

c. Loss of funds or property collected via the void December 16, 2022 judgment;

d. Interest on unpaid balances, including pre- and post-judgment interest under Iowa Code § 535.2(1); and

e. Consequential damages necessary to prevent Woodruff from profiting from its unlawful conduct.

158. Plaintiff further seeks declaratory relief that any funds collected under the void judgment constitute unjust enrichment and must be disgorged.

159. Plaintiff respectfully requests that this Court: (a) Enter judgment in Plaintiff's favor and against Defendant Woodruff Construction, LLC under this Count; (b) Award restitution in an amount to be determined at trial; (c) Order disgorgement of any funds or property obtained through enforcement of the void judgment; (d) Award interest, attorneys' fees, and costs where permitted by law or equity; and (e) Grant such other and further relief as the Court deems just, equitable, and appropriate.

### COUNT XI: MALICIOUS PROSECUTION

(Against All Defendants)

Iowa Common Law

159. Plaintiff realleges and incorporates by reference all preceding paragraphs.

160. This cause of action arises under Iowa common law for malicious prosecution. As held in *Wilson v. Hayes*, 464 N.W.2d 250 (Iowa 1990), a party is liable for malicious prosecution where: (1) the defendants initiated or continued legal proceedings against the plaintiff; (2) without probable cause; (3) with malice; and (4) the proceedings terminated in favor of the plaintiff (or were otherwise resolved to show lack of merit).

161. Defendants knowingly initiated and aggressively pursued judicial proceedings without legal justification. These actions were designed not to resolve legitimate disputes but to harass, intimidate, and financially destabilize Plaintiff and to extract leverage over him and HPC. The malicious prosecution included, but was not limited to:

a. Filing and pursuing multiple post-judgment enforcement actions against Plaintiff personally and HPC, despite full knowledge that neither was named in, nor bound by, the arbitration award or state court judgment;

b. Filing a Petition in Equity (dated December 15, 2023) seeking to pierce the corporate veil and impose liability on Plaintiff and HPC that: (i) relied on evidence obtained through misrepresentations and improper debtor examinations; (ii) presented no factual basis for claims of alter ego, fraudulent transfer, or corporate disregard; and (iii) contradicted prior litigation positions—asserting in enforcement proceedings that Henry's Painting, LLC ("HP") was active while later asserting HP's defunct status to justify personal liability; and

c. Knowingly pursuing enforcement of a judgment that had been confirmed through defective service and was void ab initio, in violation of Iowa Code § 489.705 and due process principles articulated in *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80 (1988).

162. These proceedings were initiated and continued without probable cause. Defendants:

a. Knew the arbitration award was obtained against a dissolved entity lacking legal capacity;

b. Misrepresented the authenticity of the operative contract (Version 1.21) used to support the award;

c. Failed to identify any valid legal theory under which Plaintiff or HPC could be held liable; and

d. Acted contrary to statutory limitations and clear judicial directives.

163. Defendants acted with malice—defined under Iowa law as wrongful motive or willful disregard for others' rights—with the objective of coercing financial concessions, damaging reputation, and manufacturing leverage.

164. As a direct and proximate result of Defendants' malicious prosecution, Plaintiff has suffered:

    a. Damage to business reputation and client relationships;

    b. Substantial attorney's fees and litigation costs;

    c. Emotional distress and public embarrassment;

    d. Financial strain, including loss of contracts and increased credit exposure; and

    e. Business instability from a prolonged campaign of baseless litigation.

165. These harms are ongoing and aggravated by Defendants' willful misconduct.

166. Plaintiff respectfully requests that this Court: (a) Enter judgment in favor of Plaintiff and against all Defendants under this Count; (b) Declare that Defendants' conduct constitutes malicious prosecution under Iowa law; (c) Award compensatory damages, including lost income, reputational harm, and legal expenses; (d) Award punitive damages to deter future misconduct and punish malicious litigation tactics; (e) Award costs of suit and reasonable attorneys' fees; (f) Grant summary judgment on this claim based on judicial admissions and lack of probable cause; and (g) Grant such other and further relief as the Court deems just, proper, and equitable.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Henry Herrera respectfully requests that this Court enter judgment in his favor and against all Defendants, jointly and severally, and grant the following relief:

A.    Declaratory Relief:

1.    Declare the December 16, 2022, state court judgment in *Woodruff Construction, LLC v. Henry's Painting, LLC*, Case No. LACV083742 (Iowa District Court) void and unenforceable under Federal Rule of Civil Procedure 60(b)(4);

2.    Declare the arbitration award void and unenforceable under 9 U.S.C. § 10(a)(1) and (4) and Federal Rule of Civil Procedure 60(d)(3) on grounds of fraud on the tribunal and arbitrator overreach;

3.    Declare that the judgment does not bind Plaintiff Henry Herrera individually or his business, Henry's Painting & Contracting, LLC (HPC);

4.    Declare that Defendants engaged in fraud on the court, abuse of process, and malicious prosecution in their pursuit of enforcement actions against non-parties.

B.    Vacatur and Injunctive Relief:

1. Vacate the arbitration award pursuant to 9 U.S.C. § 10(a)(1) and (4);

2. Vacate the state court judgment pursuant to Federal Rule of Civil Procedure 60(b)(4) and Rule 60(d)(3);

3. Permanently enjoin Defendants from initiating or continuing any enforcement actions, garnishments, discovery, or debtor examinations against Plaintiff or HPC based on the vacated judgment;

4. Prohibit Defendants from initiating any further post-judgment discovery, garnishment, debtor examinations, or veil-piercing actions based on the vacated award;

5. Order the quashing of all subpoenas and garnishments based on the void judgment.

C.    Monetary Relief:

1. Compensatory damages in the amount of $19,977,206, including but not limited to: a. Lost business revenue and profits; b. Financial harm and legal expenses incurred; c. Personal liability including the $36,973.28 Sherwin-Williams promissory note; d. Emotional distress; e. Reputational harm; f. Consequential damages arising from Defendants' conduct; and g. Damages from unpaid work and unjust enrichment reflecting the reasonable value of additional labor and materials provided.

2. Treble damages pursuant to 18 U.S.C. § 1964(c) for RICO violations;

3. Punitive damages under Iowa law for Defendants' willful, malicious, and fraudulent misconduct;

4. Restitution of all amounts or property obtained through void enforcement actions;

5. Pre-judgment and post-judgment interest as permitted by law;

6. The costs of this action and reasonable attorneys' fees, including: a. Fees incurred in vacating the void judgment; b. Fees arising from Defendants' misconduct; c. Recoverable fees under 42 U.S.C. § 1988, 18 U.S.C. § 1964(c), Federal Rule of Civil Procedure 60(d)(3), the FAA, and applicable state law.

D.    Sanctions and Disciplinary Referrals:

1. Impose Rule 11 sanctions against Defendants and/or their counsel for the knowing use of false documents and misrepresentations to the Court;

2. Impose sanctions under 28 U.S.C. § 1927 for multiplying proceedings in bad faith;

3. Refer attorneys Kevin C. Rigdon and Paul D. Burns to the Iowa Supreme Court Attorney Disciplinary Board for investigation of ethical violations.

E.    Additional Relief:

1.  Enter partial summary judgment in Plaintiff's favor on all applicable counts, including declaratory, injunctive, and RICO claims, based on judicial admissions, procedural violations, and the undisputed material record;

2.  Strike all evidence obtained through fraud, including the altered Subcontract Version 1.21, debtor examination testimony obtained in violation of court orders, and documents not properly authenticated;

3.  Any such other and further relief as the Court deems just, proper, and equitable.


Dated: May 7, 2025


Respectfully submitted,
/s/Henry Herrera
Henry Herrera, Plaintiff Pro Se
220 Autumn Court
North Liberty, IA 52317
Phone: (319) 800-5750
Email: HRHerrera319@gmail.com